# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

---

No. 01-30026

---

FELICIANO LEJANO and MELINDA LEJANO,

Plaintiffs – Appellants,

VERSUS

SORIAMONT STEAMSHIP AGENCIES, INC., K.S. BANDAK, K.S. BANDAK, II,
ASSURANCEFORENINGEN GARD, GARD (U.K.) LTD., A.S. BORGESTAD, and A.S.
BORGESTAD SHIPPING,

Defendants – Appellees.

---

Appeal from the United States District Court
For the Eastern District of Louisiana

---

(00-CV-2990)

March 4, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Feliciano and Melinda Lejano seek review of the district court's denial of their motion to

remand this case to state court.  Because we do not have appellate jurisdiction over this matter, we

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

dismiss the appeal.

## I.    BACKGROUND

This dispute concerns a shipboard accident on the high seas off the Florida coast. On November 7, 1991, Feliciano Lejano, a Philippine seaman, was working from a suspended scaffold on board the M/V BANDAK, a Norwegian flag vessel that was owned and operated by Norwegian entities.[1] Mr. Lejano suffered severe injuries when a rope supporting the scaffold broke, causing him to fall thirty feet to the deck below. On September 16, 1993, Mr. Lejano and his wife, Melinda, filed a civil action in Louisiana state court against K.S. Bandak, the owner and operator of the M/V BANDAK, and its foreign insurers.[2] The Lejanos brought their action under the "saving to suitors" clause,[3] seeking recovery under the Jones Act[4] and the general maritime law.

Although the state trial court initially dismissed the Lejanos' suit on *forum non conveniens*

---

[1]    Mr. Lejano was serving on the vessel under the terms of a standard Philippine Overseas Employment Administration ("POEA") employment contract. "The POEA is a Philippine government agency which regulates overseas employment of Filipinos. The POEA prescribes rules and regulations for the employment of seamen and approves their employment contracts." *Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 242 n.1 (5th Cir. 1991). Soriamont Steamship Agencies, Inc., the agent listed on Mr. Lejano's employment contract, was licensed by the POEA to recruit seamen for service on vessels.

[2]    The plaintiffs filed suit in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana (No. 454-127-D). They obtained jurisdiction over the defendants through attachment of the M/V BANDAK while it was docked within the geographic jurisdiction of the Twenty-Fourth Judicial District Court. Although nonresident attachment is often said to confer "*quasi-in-rem*" jurisdiction, "[a] more precise understanding is that a good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res.*" *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992).

[3]    28 U.S.C. § 1333(1).

[4]    46 U.S.C. § 688.

grounds, the Louisiana Fifth Circuit Court of Appeal reversed the dismissal, finding that the *forum non conveniens* doctrine did not apply to the plaintiffs' case. On remand, the trial court held that a forum selection clause in Mr. Lejano's employment contract was valid and that either Philippine or Norwegian law governed this dispute. The court therefore ordered the plaintiffs to file their claim in the Philippines or Norway, stating, however, that "'if the plaintiffs can show that the defendants are attempting to frustrate their efforts to pursue this claim in a foreign forum, this Court will proceed to adjudicate this claim applying Philippine or Norwegian law.'"[5] Both the court of appeal[6] and the Supreme Court of Louisiana[7] eventually affirmed the trial court's judgment.

On August 14, 1998, the Lejanos filed a complaint against the defendants with the Arbitration Branch of the Philippine National Labor Relations Commission ("NLRC"). A labor arbiter subsequently dismissed the complaint, finding that the plaintiffs' claims had prescribed. As a result of the dismissal, the Lejanos sought to reopen their case in Louisiana state court, and, on December 4, 1998, they filed a motion to set a trial date. Meanwhile, the defendants appealed the arbiter's ruling to the NLRC. On June 17, 1999, a divided panel of commissioners concluded that the plaintiffs' claims had not prescribed, reversed the dismissal, and remanded the case to the arbiter. The uncertain status of the Philippine arbitration proceedings caused the Louisiana trial court to hold the

---

[5]     *Lejano v. K.S. Bandak*, 705 So. 2d 158, 169 (La. 1997) (quoting the state trial court's judgment).

[6]     *See Lejano v. Bandak*, 688 So. 2d 86 (La. App. 5th Cir. 1997). The court of appeal found that the parties had conceded the inapplicability of United States law, including the Jones Act. *See id.* at 88.

[7]     *See Lejano v. K.S. Bandak*, 705 So. 2d 158 (La. 1997).

motion to set a trial date in abeyance from July 27, 1999 to November 16, 1999.[8] Then, in April

2000, the court granted the plaintiffs' motion and later assigned a trial date of November 6, 2000.

But on October 6, 2000, the defendants removed the case to federal court, relying on the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards[9] for removal

jurisdiction. The Lejanos moved to remand, contending that the Convention did not apply to this case

and that the district court therefore lacked subject matter jurisdiction. The district court denied both

the motion to remand and the Lejanos' motion for reconsideration of that ruling. The district court

also denied the plaintiffs' request for certification of the jurisdictional issue for interlocutory appeal.

On January 3, 2001, the plaintiffs filed a notice of appeal and now seek review of the district court's

refusal to remand this case to state court.

## II.    ANALYSIS

The defendants contend that this court does not have jurisdiction because the denial of a

motion to remand is an interlocutory order reviewable only after district court certification under 28

U.S.C. § 1292(b) or on appeal from a final judgment. Further contending that the plaintiffs have not

_____

[8]    On July 22, 1999, the plaintiffs filed with the NLRC a motion for clarification of its June 1999 decision. Although this motion was still pending, the plaintiffs asked for and received a dismissal of the arbitration proceedings without prejudice after the defendants removed this case to federal court. The NLRC ordered the dismissal on October 23, 2000.

[9]    9 U.S.C. §§ 201–08. Section 205 provides:
> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, *at any time before the trial* thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (emphasis added). The defendant s argued that both Mr. Lejano's employment contract and his filing of a complaint with the Arbitration Branch of the NLRC were agreements in writing to arbitrate.

satisfied either of these bases for review, they request dismissal of the appeal.

Federal Circuit Courts have jurisdiction over appeals only from: (1) final decisions under 28 U.S.C. § 1291; (2) orders that are considered final by jurisprudential exception or which are properly certified as final pursuant to Federal Rule of Civil Procedure 54(b); and (3) interlocutory orders that fall into specific classes, 28 U.S.C. § 1292(a), or which have been properly certified for appeal by the district court, 28 U.S.C. § 1292(b).[10] "An order denying remand of a case removed to federal court is not a final order within the meaning of 28 U.S.C. § 1291. . . ."[11] Thus, the order presently before us is interlocutory, and the district court did not certify it for immediate appeal.[12] The plaintiffs therefore call our attention to 28 U.S.C. § 1292(a)(3), which provides that this court has jurisdiction of appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

The existence of an "admiralty case" is the first prerequisite to application of § 1292(a)(3).[13] A plaintiff satisfies this prerequisite by properly designating his action as an admiralty case.[14] Rule 9(h) of the Federal Rules of Civil Procedure governs this designation and imposes special procedures

---

[10]  *See Dardar v. Lafourche Realty Co.*, 849 F.2d 955, 957 (5th Cir. 1988); *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir. 1981).

[11]  *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1064–65 (5th Cir. 1981).

[12]  On January 24, 2001, the district court granted an unopposed motion to stay proceedings pending arbitration and administratively closed the case.  The stay entered by the district court is not an appealable final decision, *see Green Tree Fin. Corp. — Alabama v. Randolph*, 531 U.S. 79, 87 n.2 (2000), and we find no jurisdictional significance in the administrative closure of the case.  *See Filanto, S.P.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir. 1993).

[13]  *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 663–64 (7th Cir. 1998).

[14]  *Id.* at 664.

for invoking the admiralty jurisdiction of a federal district court.[15] The rule recognizes two categories

of admiralty cases: (1) those that are exclusively within the admiralty jurisdiction, and (2) those that

fall within admiralty as well as some other basis of federal subject matter jurisdiction.[16] "[I]n order

to invoke a federal court's admiralty jurisdiction *where there exists an additional ground for federal*

*jurisdiction*, the plaintiff must identify the claim as one in admiralty to make it plain that he wishes

---

[15] *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1547 (5th Cir. 1991). Rule 9(h) provides: A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. §§ 1292(a)(3).

[16] *Wingerter*, 185 F.3d at 664–65 (citing 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3927, at 328 (2d ed. 1996)).

A plaintiff with an *in personam* admiralty or maritime claim must choose how he wishes to proceed. First, he may file suit on the "admiralty side" of federal court by virtue of 28 U.S.C. § 1333, which confers subject matter jurisdiction on the federal courts over any admiralty or maritime claim, "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). *See* FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., PERSONAL INJURY IN ADMIRALTY § 18-1 (2000). The "saving to suitors" clause effectively grants state courts subject matter jurisdiction, concurrent with federal courts, over most maritime matters. *See id.* § 1-2, at 2–3 ("The modern judicial interpretation of the 'saving to suitors' clause provides that an admiralty plaintiff can pursue his or her maritime claim, unless the claim is a purely *in rem* action or a limitation concursus proceeding, in either federal or state court, assuming the state provides its court with subject matter jurisdiction."). So, as a second option, the plaintiff may bring his claim "at law"—that is, by ordinary civil action—in state court. Finally, the "saving to suitors" clause also permits the plaintiff to proceed "at law" in a United States district court if there is an independent basis of federal jurisdiction, such as diversity of citizenship or federal question. *Id.* Important considerations surrounding the plaintiff's choice include jurisdictional requirements and the right to trial by jury. "Jurisdiction under § 1333 does not require either a jurisdictional amount or diversity of citizenship; however, where jurisdiction over a claim in federal court is based solely upon § 1333, the parties are not entitled to trial by jury." *Id.* § 18-1, at 263–64.

to invoke that jurisdictional basis rather than some other."[17] If the plaintiff does not make this "Rule 9(h) designation" in a case presenting multiple bases of jurisdiction, "the parties are not entitled to . . . the special procedures or remedies of admiralty, including the right of interlocutory appeal under section 1292(a)(3)."[18]

In *Alleman v. Bunge Corp.*, a maritime worker and his wife brought suit in Louisiana state court to recover for injuries he sustained during longshoring operations, and the defendant employer removed the action to federal court on the basis of diversity jurisdiction.[19] When the defendant sought to appeal an interlocutory order of the district court pursuant to § 1292(a)(3), this court recognized that "[n]umerous and important consequences flow from the Allemans' decision to bring their action in state court."[20] By removing the case, the defendant could not "destroy their right to prosecute their action in a common law court."[21] We therefore observed that the defendant removed the Allemans' action to the "law side" of the federal district court and, as a consequence, "the

---

[17]    *Baris*, 932 F.2d at 1547 (emphasis in original).  On the other hand, if a plaintiff's claim is cognizable only in admiralty, it is an admiralty or maritime claim for the purposes of the special practice features applicable to those claims whether so identified or not. FED. R. CIV. P. 9(h). The present case does not fall within this limited category. *See Wingerter*, 185 F.3d at 665 ("The best example of such a case is where the plaintiff asserts an in rem claim, as such a claim is within the exclusive admiralty jurisdiction of the federal courts, and therefore may be brought only in federal court.").

[18]    *Continental Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 517 (7th Cir. 1999).  *See also Foulk v. Donjon Marine Co.*, 144 F.3d 252, 255 (3d Cir. 1998) ("To use § 1292(a)(3) as a basis for appellate jurisdiction of an interlocutory order . . . a plaintiff must be asserting an admiralty or maritime claim within the meaning of Fed.R.Civ.P. 9(h).").

[19]    756 F.2d 344, 345 (5th Cir. 1984).

[20]    *Id*.

[21]    *Id.*

Allemans' action is not in the federal admiralty court's jurisdiction."[22] We then held that "[b]ecause 28 U.S.C. § 1292(a)(3) . . . may be used only if the federal court's admiralty jurisdiction has been invoked, Fed.R.Civ.P. 9(h), Bunge cannot base jurisdiction for this appeal on that statute."[23]

In their Petition for Damages, filed in Louisiana state court, the Lejanos stated, "This is an admiralty or maritime claim brought in this Court pursuant to 28 U.S.C. § 1333. . . ." The Lejanos' description of their claim reveals that they, like the Allemans, could have filed a complaint on the "admiralty side" of federal court.[24] Furthermore, the defendants' removal of the case pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–08, indicates another possible basis of federal subject matter jurisdiction.[25] But the Lejanos exercised

---

[22] *Id.* at 345–46. *See generally* MARAIST & GALLIGAN, *supra* note 16, § 18-2 (discussing removal jurisdiction).

[23] *Alleman*, 756 F.2d at 346.

[24] *See Alleman*, 756 F.2d at 345 ("The admiralty jurisdiction of the federal courts . . . could have been invoked in this case. The Allemans could have filed their complaint with a statement identifying it as a maritime claim, Fed.R.Civ.P. 9(h), in admiralty court."). *See also supra* note 16.

[25] The Lejanos argue that the district court's refusal to remand their case to state court is an abrogation of their rights under the "saving to suitors" clause. But the "saving to suitors" clause "does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies*. It does not guarantee them a nonfederal *forum*, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty." *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. 1981). Thus, if the Convention does apply here, the defendants' removal of this case does not violate the letter or spirit of the "saving to suitors" clause. The applicability of the Convention does not, however, inform us as to whether this is an admiralty case. Because we do not have appellate jurisdiction, we do not reach the close question of whether the Convention applies to employment contracts of seamen. *Compare Lejano v. K.S. Bandak*, No. 00-2990, 2000 WL 33416866 (E.D. La. Nov. 3, 2000), *with Jaranilla v. Megasea Mar. Ltd.*, 171 F. Supp. 2d 644 (E.D. La. 2001).

instead their "'historic option'"[26] to bring this action in state court under the "saving to suitors" clause of 28 U.S.C. § 1333(1). To avoid the "consequences" that befell the defendant in *Alleman*, the Lejanos could have invoked the district court's admiralty jurisdiction by making a Rule 9(h) designation after the defendants' removal of their case to the "law side" of federal court.[27] Because the Lejanos did not make this affirmative designation, *Alleman* controls, and we must dismiss the appeal.

## III.  CONCLUSION

Although the Lejanos assert a maritime claim, this is not an "admiralty case" from which an interlocutory appeal will lie under § 1292(a)(3) because the plaintiffs did not initially invoke the admiralty jurisdiction of the federal courts, nor did they amend their complaint upon removal of this case to add a Rule 9(h) designation. Because there is no other basis for appellate jurisdiction, we dismiss the appeal.

**DISMISSED FOR LACK OF APPELLATE JURISDICTION.**

---

[26]  *Alleman*, 756 F.2d at 345 (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 371 (1959)).

[27]  *See* FED. R. CIV. P. 9(h); *Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir. 1989) (stating that a plaintiff in a removed action may amend his complaint to invoke the district court's admiralty jurisdiction). *See also T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983) ("Rule 9(h) is not a harsh rule, for its third sentence expressly provides that the liberal procedures for amending complaints found in Rule 15 apply to identifying statements.").